```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
```

|   |   |   |
|---|---|---|
| ARCH INSURANCE COMPANY | : | |
| | : | |
| v. | : | Civil Action No. DKC 19-1167 |
| | : | |
| COSTELLO CONSTRUCTION OF MARYLAND, INC., et al. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract and negligence case is the motion to dismiss or in the alternative for summary judgment filed by Defendant Plump Engineering, Inc. (ECF No. 13). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be denied.

**I.   Background[1]**

On January 13, 2018, the roof of the Merriweather Post Pavilion (the "Property"), a performance art venue located in Columbia, Maryland, collapsed. The collapse occurred during "a series of renovations at the Property" (the "renovation project"). (ECF No. 1, ¶ 14).

It's My Amphitheatre, Inc. ("IMA") is the Merriweather Post Pavilion lessee. IMA hired Costello Construction of Maryland,

---

[1] Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff.

Inc. ("Defendant Costello") for the renovation project. (ECF No. 1, ¶ 14). "Due to the scope of the job, the renovation project was carried out in separate phases." (*Id.*, ¶ 15). For each phase, IMA and Defendant Costello executed a "contract governing the specific requirements for [that] particular phase." (*Id.*, ¶ 16). This action centers on Phase 4 of the renovation project.

IMA and Defendant Costello executed "AIA contract A101-2007" and adopted "AIA document A201-2017" (collectively, the "Phase 4 Contract") to govern Phase 4 of the renovation project. (ECF No. 1, ¶¶ 17-22). Under the Phase 4 Contract, Defendant Costello "was to raise the roof of the existing pavilion and reconnect to the stage house[.]" (*Id.*, ¶ 18 (alterations, emphasis, and quotation marks omitted)). The Phase 4 Contract also required Defendant Costello "to purchase and maintain Builders Risk Insurance." (*Id.*, ¶¶ 19, 21).

Defendant Maury, Donnelly & Parr, Inc. ("Defendant MDP") is Defendant Costello's insurance broker. Defendant MDP "communicated to IMA, prior to the start of Phase 4, that a Builders Risk [P]olicy insuring Phase 4 was in place." (ECF No. 1, ¶ 23). That policy, Builders Risk Policy IHQ947087905 issued by the Hanover Insurance Group ("Hanover"), "excluded coverage for property under renovation." (*Id.*, ¶ 25). Nonetheless, Defendant MDP "issued a Certificate of Liability Insurance to IMA indicating that [Defendant] Costello had obtained a Builders Risk Policy" for

2

Phase 4 of the renovation project. (*Id.*, ¶ 26). Upon receipt of the Certificate of Liability Insurance, IMA permitted Defendant Costello "to proceed with Phase 4 of the renovation project[.]" (*Id.*, ¶ 27).

Defendant Costello executed a subcontract with Defendant Rooflifters, LLC and/or Defendant Rooflifters USA, LLC (collectively, "Defendants Rooflifters) "to perform all roof lifting work for Phase 4 of the renovation project." (ECF No. 1, ¶ 28). Defendants Rooflifters then "obtained the services of" Defendant Plump Engineering, Inc. ("Defendant Plump") to assist "in designing the processes to raise the roof of the pavilion and provide for proper and adequate lateral bracing and support." (*Id.*, ¶ 29).

Defendant Plump "performed design engineering services for the roof raising, namely, calculations and design of the temporary support system for the roof[.]" (ECF No. 1, ¶ 30). Defendants Rooflifters "began hydraulically raising the pavilion roof" and "[t]he roof lifting process took place over. . . several days[.]" (*Id.*, ¶¶ 31–32). During the process, the roof collapsed after "winds passed through the Property[.]" (*Id.*, ¶ 33).

Arch Insurance Company ("Arch" or "Plaintiff") is IMA's insurance carrier. Arch reimbursed IMA for its damages from the roof collapse and submitted a claim to Hanover under Defendant Costello's Builders Risk Policy IHQ947087905. Hanover denied the

3

claim, noting the exclusion for damage to property under renovation.

On April 22, 2019, Plaintiff, as IMA's assignee, filed its complaint against Defendants Costello, MDP, Rooflifters, and Plump. (ECF No. 1). Defendants Costello, MDP, and Rooflifters each filed an answer. (ECF Nos. 11; 16; 34). On May 21, 2019, Defendant Plump filed the presently pending motion to dismiss or in the alternative for summary judgment. (ECF No. 13). Arch responded, (ECF No. 24), and Defendant Plump replied, (ECF No. 37).

## II. Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the

4

pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In reviewing a motion to dismiss, the court may "consider documents attached to the complaint, *see* Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Plaintiff attached the Phase 4 Contract (ECF Nos. 1-1; 1-2), Builder Risk Policy IHQ947087905 (ECF No. 1-3), the Certificate of Liability Insurance (ECF No. 1-4), and the subcontract between Defendant Costello and Defendants Rooflifters (ECF No. 5) to its complaint. Defendant Plump attached the subcontract between Defendants Rooflifters and it to its motion to dismiss. (ECF No. 13-2). Neither party contests the authenticity of these documents or otherwise objects to them. The court may consider these documents without converting the motion into one for summary judgment.

Plaintiff also attached photographs of the Property after the roof collapse and a damages estimate to its response. (ECF Nos. 24-1; 24-2). Defendant Plump contends that Plaintiff "has attempted to amend its [c]omplaint via its [response] to allege damages to personal property." (ECF No. 37, at 3). It is not

5

necessary to consider these documents in resolving the motion to dismiss.

**III. Analysis**

Plaintiff's complaint asserts one claim against Defendant Plump: negligence. (ECF No. 1, ¶¶ 88–93). Plaintiff alleges that Defendant Plump failed to design properly the temporary roof support system; failed to prepare proper and adequate roof raising plans; failed to perform engineering calculations for the roof lift and temporary support system; and failed to design adequate lateral support stability for the temporary lifting process. (*Id.*, ¶ 90; *see also* ECF No. 24, at 2, 4, 11). Plaintiff alleges that Defendant Plump's failures directly and proximately caused the roof collapse and "damages to real and personal property[.]" (ECF No. 1, ¶¶ 91–92).

Defendant Plump argues that the economic loss doctrine bars Plaintiff's claim. (ECF No. 13-1, at 3–8; ECF No. 37, at 2–5). Plaintiff contends that exceptions to the doctrine apply. (ECF No. 24, at 7–12). As will be seen, neither party completely and correctly applies the doctrine.

The Court of Appeals of Maryland recently "revisit[ed] the elusive economic loss doctrine[.]" *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600 (2017).

> The economic loss doctrine represents a judicial refusal to extend tort liability to negligence that causes purely economic harm in

6

> the absence of privity, physical injury, or
> risk of physical injury. Courts imposed this
> limitation on the recovery of purely economic
> losses in response to the elimination of the
> privity requirement in tort law. In Maryland,
> the economic loss doctrine bars recovery when
> the parties are not in privity with one
> another or the alleged negligent conduct did
> not result in physical injury or risk of
> severe physical injury or death.

*Id.* at 611-12.

The economic loss doctrine does not bar Plaintiff's negligence claim against Defendant Plump because the alleged negligence did not cause purely economic harm – it caused property damage. The parties discuss property damage as an exception to the economic loss doctrine, (ECF No. 13-1, at 6-7; ECF No. 24, at 11-12; ECF No. 37, at 3-5), but they misunderstand the law. *Balfour Beatty* did not identify any such exception. 451 Md. at 611-12. When the alleged negligence causes property damage, rather than purely economic harm, the economic loss doctrine does not apply at all.

In one of the early Maryland cases, *Council of Co-Owners Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co.*, 308 Md. 18, 33 (1986), the Court of Appeals of Maryland looked to Dean Prosser for a description of "economic loss" as it relates to limitations on liability for negligence. The court noted that the doctrine developed first in product liability cases:

> In products cases, liability in negligence for
> economic loss alone, unaccompanied by physical

> injury, is often denied regardless of privity. 5F. Harper, F. James and O. Gray, The Law of Torts, supra, §28.9 n. 21 at 403-04. As Dean Prosser stated:
>
>> There can be no doubt that the seller's liability for negligence covers any kind of physical harm, including not only personal injuries, but also property damage to the defective chattel itself, as where an automobile is wrecked by reason of its own bad brakes, as well as damage to any other property in the vicinity. **But where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule . . . that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery.** W. Prosser, The Law of Torts § 101 at 665 (4th ed. 1971).

The emphasized portion of that quotation reflects that the term "economic loss" focuses on a narrow type of damages, such as the diminution in value of a product, or the cost of repairing it. It does not apply, and was never meant to apply, to situations where an accident has occurred and the damages sought are for property loss.

As discussed in *Cash & Carry America, Inc. v. Roof Solutions, Inc.*, 223 Md.App. 451, 467 (2015), this notion of "economic loss" does not apply in situations like the one in that case, where allegedly negligent conduct on the part of a subcontractor

8

performing work on a structure damaged property belonging to a third party:

> In the case at bar, the economic loss doctrine would be relevant if, for example, the new roof installed on Coe's townhouse was defective in a way that posed no risk to human safety, and Coe sued Roof Solutions and Depaula in tort to recover damages for the cost to repair the defect. That claim would sound in contract, and tort recovery would not be permitted. CCA does not allege that Depaula and Roof Solutions negligently constructed a defective roof, however. It alleges that, in carrying out the roof replacement work, they carelessly used a torch so as to accidentally set fire to the roof of the townhouse. That is a tort claim to which the economic loss doctrine has no relevance.

Then, as later discussed in *Landaverde v. Navarro*, 238 Md.App. 224, 253-55 (footnotes omitted), *cert. denied sub nom. Parrish Servs. v. Landaverde,* 461 Md. 502, 503 (2018), the *Cash & Carry America* analysis turned to traditional questions of duty:

> After clarifying the nature and purpose of the economic loss doctrine, we concluded that CCA's claim, that in negligently carrying out the roof replacement work, Depaula and Roof Solutions carelessly used a torch so as to accidentally set fire to the roof, constituted "a tort claim to which the economic loss doctrine has no relevance." *Id.* at 467, 117 A.3d 52. Thus, we looked to *Jacques* [*v. First Nat'l Bank of Md.,* 307 Md. 527 (1986)]and *Whiting-Turner* to determine the duty of care in tort where there was no privity in contract or its equivalent. *Id.* at 468, 117 A.3d 52. We concluded that the risk of harm created by Depaula's misuse of the torch in performing the roof replacement work was one of personal injury and death as well as damage to personal property. *Id.* As a result, under *Jacques*,

contractual privity or its equivalent was not a prerequisite for the law to recognize a duty of care in tort. *Id.* at 468-69, 117 A.3d 52. Instead, the principal determinant of whether a duty of care in tort should be recognized was foreseeability along with other factors including:

> the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty of exercising care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Id.* at 470, 117 A.3d 52 (quoting *Patton v. United States of America Rugby Football*, 381 Md. 627, 637, 851 A.2d 566 (2004)).

Applying those standards in *Cash & Carry America*, we concluded that it "was objectively evident that Depaula's careless use of the torch in performing the roof replacement work would cause the roof to catch fire, thereby creating a risk of personal injury, death, and property damage" not just to Coe, but to any visitor in the townhouse when the fire broke out. *Cash & Carry America*, 223 Md. App. at 470, 117 A.3d 52. In addition, "the risk of damage to items inside the townhouse would not vary depending upon who owned them[,]" and "it was reasonably foreseeable that negligent conduct resulting in a fire on the townhouse roof could cause personal injury and death to people in adjacent townhouses, and to their personal property." *Id.* at 471, 117 A.3d 52. We determined that contractual privity or some other special relationship between the roofers

and third parties whose tangible personal property was located in or about the townhouse was not required. *Id.* at 473-74, 117 A.3d 52. Depaula and Roof Solutions had a "duty to exercise due care in performing the roofing work [that] included protecting CCA from sustaining damage to its tangible personal property inside the townhouse" regardless of whether the roofer had knowledge of the tangible personal property inside the townhouse or the identity of each owner of that property. *Id.* at 474, 117 A.3d 52.

Because the economic loss doctrine is inapplicable, Defendant Plump's arguments regarding privity, personal injury, and risk of severe physical injury or death as exceptions to the rule need not be addressed. Defendant Plump also requests partial summary judgment and argues that Plaintiff's recovery should be limited to "damages to the cost of property separate from the property under construction." (ECF No. 37, at 5). For similar reasons, Defendant Plump misunderstands that the economic loss doctrine does not apply and summary judgment is inappropriate. As the applicability of the economic loss doctrine is the only issue raised in the motion to dismiss or in the alternative for summary judgment, it follows that the motion will be denied.

A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
