IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| ARCH INSURANCE COMPANY | : |
|  | : |
| v. | : Civil Action No. DKC 19-1167 |
|  | : |
| COSTELLO CONSTRUCTION OF MARYLAND, INC., et al. | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action for breach of contract and negligence is the motion for leave to file amended complaint by Plaintiff Arch Insurance Company ("Arch Insurance"). (ECF No. 61). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for leave to amend will be granted in part and denied in part.

**I.  Background**

Plaintiff Arch Insurance is a licensed insurer incorporated in the State of Missouri with its principal place of business in Jersey City, New Jersey. It is both a subrogee and assignee of It's My Amphitheater, Inc ("IMA"). IMA is a Maryland Corporation with its principal place of business in Bethesda. IMA is a lessee of a property in Columbia, Maryland that is home to the Merriweather Post Pavilion, a multi-building performance art venue

that includes an amphitheater.   This action arises out of the collapse of the roof during renovation.

Arch Insurance filed this suit on April 19, 2019, against Defendants Costello Construction of Maryland, Inc. ("Costello"), Maury, Donnelly & Parr, Inc. ("MDP"),[1] Rooflifters USA, LLC, Rooflifters, LLC (jointly "Rooflifters Defendants"); and Plump Engineering, Inc. (ECF No. 1).   At a Fed.R.Civ.P. 16 conference on May 27, 2020, deadlines were set, including August 3, 2020, for the joinder of additional parties and amendment of pleadings.   By May 29, 2020, Plaintiff had served all parties with discovery.   On May 30, 2019, Rooflifters submitted its Corporate Disclosure Statement as per Local Rule 103.3.   That same day, however, it was informed by QC Notice that Local Rule 103.3 specifically requests each entity to identify all its members and their citizenship.   On May 31 it filed a second Disclosure Statement identifying Mr. Shiff, a resident of Toronto, Canada, and Mason Harris ("Mr. Harris"), a resident of Florida, as its members.   (ECF No. 23). After extension requests by various Defendants were granted, on July 30, 2020, Rooflifters served answers to discovery on Plaintiff after the parties finalized negotiations on a confidentiality provision.   That same day, the court granted a joint motion to

---

[1] MDP is a Maryland Corporation and licensed insurance broker with its principal place of business in Baltimore, Maryland.

extend the deadline to move to join additional parties and amend pleading to September 3, 2020.  (ECF No. 55).

On August 18, 2020, without seeking the leave of court, Arch Insurance filed an amended complaint adding numerous Defendants. (ECF No. 59).   The court informed Plaintiff by paperless notice that unless all parties consented to such a filing it had to file a motion for leave.  (ECF No. 60).   In response, Arch Insurance filed a motion for leave to amend on August 20, 2020, (ECF No. 61), and the Rooflifters Defendants opposed this motion on September 2, 2020.  (ECF No. 62).  Arch Insurance did not file a reply.  Third party and cross-complaints were subsequently filed by various Defendants.   On September 23, 2020, attempting to resolve the inclusion of the newly named defendants, counsel for Plaintiff requested a conference to referee ongoing discovery. (ECF No. 65).   Parties were informed by paperless notice on September 24, 2020 that a new schedule could be discussed once the motion for leave to amend was resolved.  (ECF No. 68).

As alleged by Arch Insurance in the proposed Amended Complaint, IMA hired Costello to renovate its property.   Brad Canfield, Vice President ("VP") of Operations for IMA reached out to Marty Shiff ("Mr. Shiff"), owner of "Rooflifters,"[2] to inquire

---

[2] Plaintiff alleges that the "entities acted as a *single enterprise* and were all involved, in some manner, with the work performed in the above matter" and therefore, at times, refers to

3

if they could work as a sub-contractor on "Phase 4" of the renovation project.  IMA sent Costello, as the general contractor, to subcontract with Rooflifters on this work.  Rooflifters refused to execute a subcontract and has still not done so.

Nonetheless, the business took on the project and Arch Insurance contends that, on September 29, 2017, "Rooflifters Canada" outsourced its design work to "Industrial Roof Raise Engineering Solutions" doing business as "Roof Raise Engineering Solutions" and "Samuel Jacob,[3] P.E."  Industrial Roof Raise Engineering Solutions drew up calculations and design for "lifting protocols" for the project.  "Rooflifters" also retained Plump to review and stamp the drawings by a Maryland engineer on October 24, 2017.  Before the actual start of Phase 4, IMA and Costello executed a contract for which Costello purchased and maintained Builders Risk Insurance.  This policy was later found to exclude coverage for property under renovation.  On January 13, 2018, while the parties were in the process of "hydraulically raising the pavilion roof" from its exiting position, heavy winds hit the area.  Due to what Arch Insurance contends are improper calculations and

---

all these entities collectively as "Rooflifters." (ECF No. 59, ¶ 14).

    [3] In an apparent typo, the proposed amended complaint flips between "Jacob" and "Jacobs" but the proposed amended complaint cover page correctly names him the former.

design of the temporary support system in place, the roof collapsed under the force of the winds.

Arch Insurance seeks to add (1) Rooflifters Holding Corp, (2) Rooflifters General Contracting Corp, (3) Rooflifters Equipment, LLC, (4) "Rooflifters Canada, Inc.",[4] (5) Rooflifters, Inc., (6) Rooflifters Acquisition Corp., (7) Rooflifters General Contracting, Inc., (8) Industrial Roof Raise Engineering Solutions, and (9) Samuel Jacob ("Mr. Jacob"), P.E., PQS. (ECF No. 61-4, at 3-4).

## II.  Standard of Review

The Federal Rules of Civil Procedure provide that a party may amend a pleading as a matter of course within 21 days of serving it.  Fed.R.Civ.P. 15(a)(1).  Once the right to amend as a matter of course expires, as it has in this case, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed.R.Civ.P. 15(a)(2).  "[A]fter the deadlines provided by a scheduling order have passed, the good cause standard . . . must be satisfied to justify the leave to amend."  *Ademiluyi*, No. ELH-12-0752 at *4 (quoting *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008)).  Nevertheless, denial of leave to amend should occur "only when the amendment would be prejudicial

---

[4] Defendants assert that Plaintiff mistakes the name of the entity which is actually "Rooflifters Canada Limited" as per a Certificate of Incorporation they include with their opposition. (ECF No. 62-1, at 3 n.2).

to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986); *see also Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.*, 674 F.2d 369, 379 (4th Cir. 2012). An amendment is futile if it could not withstand a motion to dismiss. *See Perkins v. U.S.*, 55 F.3d 910, 917 (4th Cir. 1995). A complaint against an improper party would be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b). *CoStar Realty Info., Inc. v. Meissner*, 604 F.Supp.2d 757, 767 n.3 (D.Md. 2009).

## III. Analysis

Arch Insurance moves to amend its complaint because, "[t]he information and documents provided through discovery warrant the filing of an Amended Complaint naming those additional parties whose involvement in critical aspects of the project at issue was not known to Plaintiff when the original Complaint was filed." Its good faith in this request is evident, it argues, as it "moved swiftly to evaluate material provided in order to identify the previously-unknown parties who, together with the present defendants, played critical roles in the construction project" at issue here. The request, it says, comes "within weeks of Plaintiff obtaining the documentation that provides the basis for its filing." (ECF No. 61, at 3). It argues that this satisfies the good cause standard and justifies granting its motion to amend.

As noted, the amendment would add Defendants: (1) Rooflifters Holding Corp, (2) Rooflifters General Contracting Corp, (3) Rooflifters Equipment, LLC, (4) "Rooflifters Canada, Inc.", (5) Rooflifters, Inc., (6) Rooflifters Acquisition Corp., (7) Rooflifters General Contracting, Inc., (8) Industrial Roof Raise Engineering Solutions, and (9) Samuel Jacob ("Mr. Jacob"), P.E., PQS. (ECF No. 61-4, at 3-4). Plaintiff concedes in the proposed amended complaint that the exact role of the newly named Rooflifters entities remains unclear, "[d]ue to multiple misleading, inaccurate, and confusing communications perpetuated by the Rooflifters." (ECF No. 59, ¶ 14). But, as mentioned, Plaintiff alleges the "entities acted as a *single enterprise*." (ECF No. 59, ¶ 14). Plaintiff contends they all "played a significant role in the occurrence." (ECF No. 61, at 4-5). Arch Insurance notes in its motion that the discovery deadline is not until December. (ECF No. 61-2, at 3). Therefore, it argues their addition "will not unfairly prejudice any current parties or any parties sought to be joined" as "this matter is still in the very early stages of discovery." (ECF No. 61-1, at 4).

Defendants Costello, MDP, and Plump all consent to this motion, and only the Rooflifters Defendants object. (ECF No. 61-1, at 2-3);(ECF No. 62). The Rooflifters Defendants concede that the facts of the complaint expressly mention three of these entities: "Rooflifters Canada" Limited, Industrial Roof

Engineering Solutions and Mr. Jacob, P.E., "PQS."[6] (*Id.*, at 3 n.1) (citing ECF No. 59, ¶ 37) ("Rooflifters Canada outsourced the design work for the Project to Industrial Roof Raise Engineering Solutions d/b/a Roof Raise Engineering Solutions and Samuel Jacob, P.E."). As such they do not object to their inclusion in the amended complaint. They object, however, to the inclusion of six of the new purported defendants: "[1] Rooflifters Holding Corp. (in Florida); [2] Rooflifters General Contracting Corp. (in Florida); [3] Rooflifters Equipment, LLC (in Florida); . . . [4] Rooflifters, Inc. (in Ontario, Canada); [5] Rooflifters Acquisition Corp. (in Ontario, Canada); [and] [6] Rooflifters General Contracting, Inc. (in Ontario, Canada)." (ECF No. 62, at 2). Outside of the bald assertion that all the named Rooflifters entities operated as a single enterprise, Defendants highlight that there are "no factual allegations regarding alleged actions by any of the other six (6) new 'Rooflifters' entities." (*Id.*, at 3). Instead, a new entry makes what Rooflifters Defendants label "an all-encompassing conclusory claim that '[t]he Rooflifters entities' were 'negligent and careless' by allegedly performing a list of allegedly negligent actions." (*Id.*) (quoting ECF No. 59,

---

[6] In an apparent typo, the Rooflifters Defendants twice list his qualification as "POS." (ECF No. 62, at 2-3). But a publicly accessible LinkedIn profile shows a "Samuel P. Jacob. P.Eng., PQS," a "Proprietor at Roof Raise Engineering Solutions." https://ca.linkedin.com/in/samuel-p-jacob-p-eng-pqs-b962a910 (last visited: October 2, 2020).

¶ 89).  Rooflifters' opposition rejects the claim, dropped in a footnote to the proposed amended complaint, that it "refused to fully answer discovery prior to the time required to Amend the Complaint to allow Plaintiff opportunity to parse out the proper parties."  (ECF No. 62, at 4) (citing ECF No. 59, ¶ 87 n.1).   It points out that this "ad hominem accusation" is not supported by "any specific discovery request" and "by no reference to any specific claimed failure of discovery."  (ECF No. 62, at 4).

Arch Insurance's reference to a "single enterprise" invokes an arguably misplaced theory here.  The doctrine is most often invoked in jurisdictional disputes where a party attempts to attribute a subsidiary's contacts to a parent corporation, which is not the case here.  *Osiris Therapeutics, Inc. v. MiMedx Group, Inc.*, No. CCB-18-950, 2018 WL 6573099 at *3 (D.Md. Decem. 13, 2018); *see also Bailey v. Atl. Auto. Corp.*, 992 F.Supp.2d 560, 568 (D.Md. 2014).  The term of art has also been invoked in specific statutory contexts.  *See, e.g.*, *Brock v. Hamad*, F.2d 804, 806 (4th Cir. 1989) (describing the FLSA's three-part test to determine a "single enterprise" focusing on whether businesses had "unified operations or common control" and "for a common business purpose").  Nonetheless, its inquiry is "comparable to the corporate law question of piercing the corporate veil."  *Id.* (citing *Goodyear Dunlop Tires Ops.*, 564 U.S. 915, 930 (2011)).   "Piercing the

corporate veil under Maryland law is a high bar." *Osiris*, No. CCB-18-950 at *3.

The exact role, if any, of these additional Rooflifters entities remains unclear, and leave to add them will be denied. If, at some future date, Arch Insurance develops information that any should be added, or substituted, for the current Rooflifters defendants, it may again seek leave. Because they all appear to share addresses and officers, there will be no prejudice if they are added later. It is unnecessary to complicate the pleadings.

## IV. Conclusion

For the foregoing reasons, the motion for leave to amend will be granted in part and denied in part. Leave will be granted to add Rooflifters Canada Limited, Industrial Roof Engineering Solutions and Mr. Jacob, P.E., PQS. Leave will be denied as to the remaining Rooflifters entities. A separate order will follow.

                              /s/
                    _____
                    DEBORAH K. CHASANOW
                    United States District Judge